THE PEOPLE *ex rel.* JOHN GALVIN *v.* THE JUDGE OF THE TENTH JUDICIAL DISTRICT.

In an application for a *mandamus* to compel a District Judge to sign a bill of exceptions, which the relator alleges he refuses to do, and where the District Judge, in his answer, avers that he has signed a true bill of exceptions, and that the one presented by relator is not a true bill: *Held,* that the relator is not entitled to a jury to try the issue, under section four hundred and seventy-two of the Practice Act.

Courts of such extended jurisdiction and grave responsibility must, from the very nature of the case, be trusted as to the fidelity of their records, and their decision thereon is final and conclusive.

MANDAMUS.

This was an application to this Court for a writ of *mandamus,* against the Judge of the Tenth Judicial District, to compel him to sign a bill of exceptions.

*Rowe & Mott* for Plaintiff.

People *v.* Judge of Tenth Judicial District.

*Thos. H. Williams, Attorney-General,* for Respondent.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

Application for *mandamus.* The relator was convicted of murder in the first degree, and sentenced to be executed. From the judgment of the Court below, he appealed to this Court. He presented to the Judge of the District Court what he alleges was a true bill of exceptions, which the Judge refused to sign. The Judge, in his answer, states that he did sign a bill of exceptions which was, according to his best recollection and belief, correct; and he still believes the same to be correct and true in every particular; and that he could not conscientiously alter or change the same. The relator, under this state of the case, claims the right to have this issue of fact tried by a jury, under the provisions of the four hundred and seventy-second section of the Practice Act.

Under the Constitution of this State, this Court has appellate jurisdiction "in all criminal cases amounting to felony, on questions of *law alone.*"

The proposed question is simply a question of fact and not of law. The Judge alleges he did sign a *true* bill of exceptions, and the relator traverses this allegation. How, then, can this Court, having only appellate jurisdiction on questions of law, proceed to try a disputed question of fact?

In answer to this view, it is substantially maintained by the counsel of the relator, that this Court is not asked to *try* the issue of fact, or to exercise any *original* jurisdiction, but simply to employ its superintending power to compel a true history of the proceedings of the Court below to be sent up to this Court. And as this Court could not say to the District Judge, "you must sign the particular bill of exceptions," the only remedy given the defendant, is that found in section four hundred and seventy-two, allowing a jury to try the issue of fact.

The real question presented is, whether the record of the District Court can be corrected by the verdict of a jury. The object of a bill of exceptions, as well stated by the counsel of the relator, "is to make that record which before was not record." The Judge having signed a bill of exceptions, it became a part of the record in the case, and the only effect of the verdict of the jury, if different, would be to correct the record.

The power to determine every issue between parties, must be placed somewhere. There must be an end of controversies, or the system must fail to accomplish the very object intended. The District Courts are Courts of original jurisdiction, of the highest order known to our Constitution. They are Courts of grave dignity, and are required to keep a record of all their proceedings; and after they have assumed to do so, can their rec-

ords be corrected by any other power known to our law? The proceedings are known to these Courts, because they take place in their presence. Can a jury be called in to decide as to what occurred in the presence of the Court? Juries are used as instruments, to determine facts unknown to the Courts. But a Court does not require the verdict of a jury to inform it of facts occurring in the presence of the Court itself. Courts of such extended jurisdiction and grave responsibility as the District Courts must, from the very nature of the case, be trusted as to the fidelity of their own records. It would destroy all confidence in the verity of the records of these Courts, were the rule once laid down that their truth could be questioned. We should soon be called upon to direct issues of fact to be tried by a jury, as to whether the statements settled by District Judges, in civil cases, contained the whole truth, or otherwise. Every criminal convicted of murder in the first degree, could readily procure a lengthened stay of execution, by raising an issue of fact with the District Judge.

It is true that the language of the four hundred and seventy-second section is general, and would seem to include all cases where there was an issue of fact raised by the return to the alternative writ. But this general language only applies to *proper cases.* It could not have been the intention of the Legislature to give such an extraordinary power to juries as that claimed by the relator.

The relator may be without any judicial remedy. But this is the case with persons who are convicted by the verdict of a jury, when innocent. If the alleged error in the proceedings of the Court related to a mere legal question, not going so much to the merits of the case, then the relator is not so much injured as to justify a departure from the salutary principles of the law. But if, on the other hand, he was convicted when innocent, his remedy must be sought in the pardoning power of the Executive.

We consider the application in this case as novel, and without precedent. We, therefore, have no hesitation in denying it.